UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| THE REVELRY GROUP LLC, a foreign limited liability company, registered to transact business in the State of Idaho,<br><br>     Plaintiff,<br>v.<br><br>DAVID JOBE, an individual, and LUKE KIRCHER, an individual,<br><br>     Defendants. | Case No. 1:22-cv-00510-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Plaintiff The Revelry Group LLC's Motion for Preliminary Injunction. Dkt. 2. On March 17, 2023, the Court held an evidentiary hearing and took the Motion under advisement. For the reasons below, the Court DENIES the Motion.

## II. BACKGROUND

Plaintiff The Revelry Group LLC is a food, beverage, and hospitality business that conducts business in Idaho and other states. Dkt. 2-1, at 2. Revelry is well known in the catering and culinary community for hosting large events involving many influential individuals and businesses. Dkt. 2-1, at 2–3. The focus of these events ranges from food and beverages to catering, hospitality, and culinary skills. *Id.* The most famous of these

events is the Food and Beverage Leadership Exchange held in Sun Valley, Idaho (also known as "FaBLE"), which Revelry has been running for twenty years. *Id.*; Dkt. 16, at 5. Other big events include the FoodOvation Exchange and the Global Foodservice Hospitality Exchange ("GFHE"). Dkt. 16, at 5. Each of these events generates substantial profits and goodwill. Dkt. 2-1, at 3.

Defendants David Jobe and Luke Kircher started to work for Revelry in 2017 and 2018, respectively. Dkt. 2-1, at 3. During their time with Revelry, Jobe and Kircher led the exchange events division, and Jobe became an equity member of Revelry in 2019. Dkt. 2-1, at 3; Dkt. 16, at 4. Defendants were very involved with Revelry's business model, clients, customers, and sponsors. *Id.* In 2019, however, salary and loan payment disputes started to develop between Revelry and Defendants.

On January 10, 2019, Kircher signed an employment agreement with Revelry. Dkt. 16, at 5. The agreement contained obligations regarding non-solicitation, non-competition, and proprietary and confidential information covenants. Dkt. 2-1, at 3. It also outlined Kircher's annual salary of $150,000 to be paid twice a month in twenty-four equal payments. Dkt. 16, at 5. For three months, Revelry paid below Kircher's agreed-on salary and never reimbursed him for the missed amounts. *Id.* at 6.

Similarly, in July 2019, Jobe loaned Revelry $250,000 to be repaid with interest[1] on September 30, 2019. *Id.* Revelry failed to make a timely payment, so Jobe and Revelry

---

[1] At the hearing, Revelry stated that it eventually repaid the loan. Revelry did not explicitly state that it repaid the interest. Whereas, at the hearing, Jobe stated that the loan principal and the interest were not repaid.

signed another promissory note to extend the repayment date until February 15, 2020. *Id*. Revelry did not repay the loan on this date either. *Id*. However, Revelry did contend that it repaid the balance later and argues that the COVID pandemic slowed the repayment of the loan. Dkt. 23, at 2. Jobe's Declaration contains an email and a promissory note showing that Revelry guaranteed the loan and the interest on the loan would be repaid. Dkt. 16-4, at 8–12. However, there is no evidence in the record showing receipt of the loan or the interest on the loan being repaid.[2]

In November 2021, Kircher resigned from Revelry. Dkt. 2-1, at 3. The restrictive covenant in Kircher's contract prevented him from soliciting Revelry's customers for one year. *Id*. at 4. Then at the conclusion of the GFHE 2022 event, Jobe relayed to Revelry that he intended to leave the company. Dkt. 16, at 6. Negotiations to develop a separation agreement started on August 1, 2022, and eventually ended on September 12, 2022, when Revelry sent an agreement to Jobe. *Id*. at 7. Both Revelry and Jobe signed the agreement on the same day. *Id*. Jobe and Revelry contend that the separation agreement limited different actions of Jobe: Revelry states that Jobe was restricted from all events that were similar to Revelry's exchange events, while Jobe states he was only restricted from conducting events similar to FoodOvation. Dkt. 2-1, at 6; Dkt. 16, at 7. Revelry contends that the Defendants' conduct following their departure from Revelry violated their respective contracts and verbal promises with Revelry. Dkt 2-1, at 5–6.

---

[2] The Court notes that the Separation Agreement between Jobe and Revelry contains a section that absolves Revelry from any outstanding loans and interest on loans between them. Dkt. 1, at 46. Section 12(b) of the Separation Agreement states, "[Jobe] agrees there will be no other financial considerations apart from this agreement, including the dispute of any outstanding loans or interest on loans." *Id*.

In September 2022, Defendants formed Prosper23 LLC, a business centered on catering and culinary skills. Dkt. 16, at 7. Prosper23 is centered around Prosper Forum 2023, which is scheduled to have its inaugural event on August 27–30, 2023. *Id*. The event is expected to bring in close to $3 million in sponsorships and to have over 100 companies in the catering and culinary industry participate. *Id*.

On September 16, 2022, after Revelry and Jobe separated, Revelry learned about Prosper23 and was able to obtain pitch materials for the event. Dkt. 2-1, at 6–7; Dkt. 3-2. Revelry also discovered that Defendants were the heads of Prosper, despite an alleged verbal promise from Jobe on July 27, 2022, to not work with Kircher. Dkt. 2-1, at 5–6. Revelry contends that the Defendants' partnership and the existence of Prosper23 violate the contracts that Defendants signed when they left Revelry. Dkt. 2-1, at 6–7. Furthermore, Revelry states that the pitch materials are a "complete mimic" of Revelry's 2023 GFHE event. *Id*., at 7.

Shortly after Revelry gained the pitch materials, Revelry had a call with sponsors and clients who were split and undecided on which event they wanted to support because limited resources made it difficult to support both. *Id*., at 6. Revelry was taken off guard by this revelation and cancelled the 2023 GFHE event altogether. *Id*., at 7.

Revelry now alleges substantial damages ranging over $2 million from the lost estimated revenue of GFHE 2023. *Id*., at 8. Revelry further alleges that its reputation has been irreparably damaged, and that Defendants have been spreading false statements to Revelry's former sponsors, clients, and customers to dissuade them from doing business with Revelry. *Id*.

Revelry sent a series of cease-and-desist letters to Defendants throughout September 2022, which Defendants stated were vague and unclear as to what conduct Revelry was seeking to cease. Dkt. 16, at 8. Jobe's counsel contacted Revelry via email for clarification, but Revelry never replied. *Id*. Revelry contends that its letters were in "clear terms." Dkt. 2-1, at 10.

On December 19, 2022, Revelry filed with the Court a Complaint against Defendants alleging fraud, breach of contract, breach of implied duty of good faith and fair dealing, recissions, tortious interference with prospective economic advantage, violation of the Idaho Consumer Protection Act (Idaho Code § 48-603(8), (17)), unjust enrichment, and moved for temporary and permanent injunctive relief under Federal Rule of Civil Procedure 65(a) and (d). Dkt. 1. On the same day, Revelry filed a Motion for Preliminary Injunction to enjoin Defendants from further activity in relation to Prosper23 and the alleged solicitation of Revelry's customers, clients, and sponsors. Dkt. 2.

On February 17, Defendants filed an Answer and counterclaimed against Revelry alleging breach of contract. Dkt. 15. On the same day, Defendants filed a Response to the Motion for Preliminary Injunction. Dkt. 16.

On March 10, 2023, the Court issued an order granting Revelry's Motion/Request for Evidentiary Hearing (Dkt. 21), granting Revelry's Motion to Seal (Dkt. 3), and denying Defendants' Evidentiary Objections re: Motion for Preliminary Injunction (Dkt. 16-1).

### III. LEGAL STANDARD

A preliminary injunction's purpose is to prevent irreparable harm that occurs before a court can render a decision on the merits. Injunctive relief "is an extraordinary remedy

that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (cleaned up). A party seeking a preliminary injunction must establish: (1) a likelihood of success on the merits; (2) likely irreparable harm in the absence of a preliminary injunction; (3) that the balance of equities weighs in favor of an injunction; and (4) that an injunction is in the public interest. *Id.* at 20.

Although a plaintiff seeking injunctive relief must satisfy all four of the *Winter* factors, the Ninth Circuit has expressly affirmed a "sliding scale" approach post-*Winter*. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under this approach, "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135 (cleaned up). Serious questions are those "which cannot be resolved one way or the other at the hearing on the injunction." *Bernhardt v. L.A. Cnty.*, 339 F.3d 920, 926 (9th Cir. 2003) (cleaned up).

A preliminary injunction may only be awarded "upon a clear showing" of evidence that supports each relevant preliminary injunction factor. *Winter*, 555 U.S. at 22. "This 'clear showing' requires factual support beyond the allegations of the complaint, but the evidence need not strictly comply with the Federal Rules of Evidence." *CI Games S.A. v. Destination Films*, 2016 WL 9185391, at *11 (C.D. Cal. Oct. 25, 2016) (*citing Flynt Distributing Co., Inc. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984)).

The basic function of a preliminary injunction is to "preserve the status quo ante

litem pending a determination of the action on the merits." *L.A. Mem'l Coliseum Comm'n*

*v. Nat'l Football League*, 634 F.2d 1197, 1200 (9th Cir. 1980).

## IV. ANALYSIS

The Court now addresses each of the necessary elements for a preliminary injunction:

(A) Likelihood of Success on the Merits; (B) Irreparable Harm; (C) Balance of Equities;

and (D) Public Interest.

### A. Likelihood of Success on the Merits

The parties spend the bulk of their time discussing this factor. Revelry applies the

breach of contract claim against both Defendants but only applies the fraud claim against

Jobe. The Court divides its analysis in the same fashion.[3]

#### 1. David Jobe

##### a. <u>Breach of Contract</u>

###### (i) The Separation Agreement

In Idaho, "[t]he elements for a claim for breach of contract are: (a) the existence of

the contract, (b) the breach of the contract, (c) the breach caused damages, and (d) the

amount of those damages." *Mosell Equities, LLC v. Berryhill & Co., Inc.*, 297 P.3d 232,

241 (Idaho 2013). Jobe and Revelry agree that a written contract existed between them.

What Jobe and Revelry disagree on is whether the restrictive covenants are still applicable

to Jobe.

---

[3] Revelry argues ripeness and standing in its motion. Dkt. 20-23. However, Defendants never addressed either in their response. The Court sees no issues on ripeness or standing, thus the Court will not address either in its analysis.

For restrictive covenants, under Idaho law:

A key employee . . . may enter into a written agreement or covenant that protects the employer's legitimate business interests and prohibits the key employee . . . from engaging in employment or a line of business that is in direct competition with the employer's business after termination of employment, and the same shall be enforceable, if the agreement or covenant is reasonable as to its duration, geographical area, type of employment or line of business, and does not impose a greater restraint than is reasonably necessary to protect the employer's legitimate business interests.

Idaho Code § 44-2701. Based on Revelry's assertions, Jobe was a key employee[4] and was sought after by Revelry for his knowledge and skill in the field. Jobe's knowledge and expertise are sufficient reasons for Revelry to seek a restrictive covenant against him upon termination.

The Idaho Supreme Court states noncompete provisions are generally disfavored as they are against public policy but can be upheld "under circumstances." *Taylor v. Taylor*, 504 P.3d 342, 350 (Idaho 2022). In addition, the Idaho Supreme Court said, "regardless of the purpose underlying the agreement at issue, we have steadfastly held that to be enforceable a noncompete provision must be reasonable as applied to the covenantor, the covenantee, and the general public." *Id*. (cleaned up).

Further, "the reasonableness of a noncompete provision is generally assessed by

---

[4] A "key employee" is statutorily defined as:

[E]mployees . . . who, by reason of the employer's investment of time, money, trust, exposure to the public, or exposure to technologies, intellectual property, business plans, business processes and methods of operation, customers, vendors or other business relationships during the course of employment, have gained a high level of inside knowledge, influence, credibility, notoriety, fame, reputation or public persona as a representative or spokesperson of the employer and, as a result, have the ability to harm or threaten an employer's legitimate business interests.

Idaho Code § 44-2702(1).

examining three essential terms: (1) time; (2) territory; and (3) scope of restricted activities." *Id.* (cleaned up). If any of the three terms are found to be unreasonable, then the noncompete provision of the contract will be unenforceable. *See id.*, at 815.

First, the Court will address the term of time. The Separation Agreement's non-competition clause states, "Through and until December 31, 2027, Employee shall not, directly or indirectly, participate in any Restricted Activity [] within the Restricted Territory." Dkt. 1, at 45. The reasonable duration for a covenant not to compete is eighteen months or less under Idaho law. Idaho Code § 44-2704(1). Under the agreement, the duration is longer than eighteen months. However, the duration can be extended if consideration for an extension has been given. *Id.*

Here, the Separation Agreement's consideration section states that Revelry agreed to: (1) pay Jobe for his membership interest; (2) have Jobe's wages paid through the separation date; (3) release Jobe from the restrictive covenants of the Operating Agreement; and (4) reimburse Jobe for "all necessary, reasonable, and preauthorized expenditures."[5] Dkt. 1, at 42. In exchange, Jobe agreed in the Separation Agreement to not sue Revelry as long as the consideration promised in the contract was fulfilled by Revelry. *Id.* at 42–43. This may be sufficient consideration to warrant the extended duration. *See McColm-Traska v. Valley View, Inc.*, 65 P.3d 519, 523 (Idaho 2003) ("A promisee's bargained-for action or forbearance, given in exchange for a promise, constitutes consideration."). Thus, the duration restriction is likely reasonable.

---

[5] However, (1) and (2) and (4) would be requirements Revelry must meet even without the Separation Agreement.

Even if the consideration was not adequate, making the extended duration unreasonable, the Court may, at its discretion, modify the duration to make it reasonable and enforceable under the "blue pencil" rule. Idaho Code § 44-2703; *Pinnacle Performance, Inc. v. Hessing*, 17 P.3d 308, 313 (Idaho Ct. App. 2001) ("The Idaho Supreme Court has sanctioned the modification of otherwise unreasonable covenants not to compete."); *DePuy Synthes Sales v. Williams*, 2017 WL 5011880, at *4 (D. Idaho Nov. 2, 2017) (noting the Idaho legislature's adoption of "blue penciling"). If the Court were to later modify the duration to eighteen months as allowed under statute—and assuming that Jobe is in violation of the restrictions on territory and scope—Jobe would still be in violation of the time element. Prosper Forum 2023 is supposed to start on August 27, 2023, which would be thirteen months after the date of his termination on July 31, 2022. Dkt. 1, at 40. Thus, even if the duration restriction was unreasonable, the Court could later modify the duration to make it reasonable.

Second, the Court will address territory. Under the non-competition clause, "[f]or purposes of this Agreement, 'Restricted Territory' means any state within the United States." Dkt. 1, at 45. "[A]n otherwise overly broad geographical limitation may be considered reasonable if the class of persons with whom contact is prohibited is sufficiently limited." *Pinnacle Performance*, 17 P.3d at 312. The territory restriction is unreasonable as it covers the entire United States, but it may be considered reasonable if the restricted contacts are limited. The Separation Agreement, under its non-solicitation clause, lists the "Restricted Customers" including Hershey Foodservice, Nestle Waters, Idahoan Foods, Savor Brands, Unilever Foodservice, Tillamook Foods, Tabasco Foods, Upfield

Professional, Oregon Fruit Products, Buyers Edge Platform, and Seafood from Scotland. Dkt. 1, at 45. In *Pinnacle Performance*, the court held that the geographical restriction would be unreasonable and unenforceable because it applied to all the plaintiff's clients. The court further reasoned that the restriction could have been reasonable if it only applied to clients that the defendant had "any contact" with during employment. *Pinnacle Performance*, 17 P.3d at 312. Under *Pinnacle Performance*, the territory restriction could be reasonable, if it applies to the restricted customers only, because the parties agreed that Jobe had contact with all of them during the last twelve months of his employment with Revelry. Dkt. 1, at 45; *see Pinnacle Performance*, 17 P.3d at 312.

Next, the Court must decide whether Jobe solicited any of the restricted customers. Revelry identified several solicited restricted customers, such as Hershey Foodservice, Nestle Waters, Sysco, and Oregon Fruit Products. Dkt. 23, at 14. Defendants state that the only restricted customer that Revelry can identify with evidence is Hershey Foodservice based on Defendants' pitch materials for Prosper Forum 2023. Dkt. 16, at 11. Defendants, however, note that Hershey Foodservice was only referenced as a potential member in the materials and Hershey Foodservice's inclusion was pending approval. Dkt. 3-2, at 8. Defendants argue that Hershey Foodservice had never been contacted by Defendants and that the cited document was just a proposal not an actual list of contacts. Dkt. 16, at 11. The Court has reviewed the material provided by Revelry and Defendants, and the Court was only able to identify Hershey Foodservice in the pitch. The Court agrees with Defendants that, based on the provided evidence, Revelry does not meet its burden to prove that Jobe likely violated the non-competition clause on the term of territory.

A preliminary injunction requires there to be a "clear showing" of evidence that supports each relevant preliminary injunction factor. *Winter*, 555 U.S. at 22. "Clear showing" requires evidence that goes further than the allegations of the complaint. *CI Games*, 2016 WL 9185391, at *11. The allegations in Revelry's complaint and motion are not enough to meet the likelihood of success on the merits factor. Only Hershey Foodservice was identified as a potential member, and there is no evidence that Hershey Foodservice had been contacted.

Furthermore, the pitch was still in its infancy and was only provided to a select few individuals that were not restricted customers. The document itself suggests that it was merely a pitch with words like "potential" and "tentative" found repeatedly in the document. During the hearing, Jobe stated he only contacted Ecolab, PepsiCo, and Sysco to gain feedback on the pitch materials (all of which are not restricted customers). Jobe at the hearing further explained that multiple companies—including Nestle Waters—contacted him because of his relationships in the industry. Jobe told the companies if they wished to do business with Prosper Forum, they needed a release from Revelry pursuant to Section 11 of the Separation Agreement. Dkt. 1, at 45. There is no other evidence that restricted customers were directly contacted nor solicited by Defendants. Thus, even if territory restriction is reasonable, Jobe is not in violation of the covenant.

Third, the Court now turns to the scope of the restricted activities. The Separation Agreement's "Restricted Activity" clause states that Jobe was restricted from

> participating in the ownership, management, operations or control of, any FoodOvation style events, defined as any events with 250 or less attendees that are designed to allow chefs, employees, or other contracted

representatives of manufacturers to meet directly with foodservice industry (commercial or non-commercial) or supermarket deli operators.

Dkt. 1, at 45. Revelry itself states that Prosper23 is a "mimic" of its GFHE event. Dkt. 2-1, at 7. There is no testimony that Prosper23 mimics FoodOvation. Defendants describe Revelry's GFHE event as being "an event for executives of leading restaurant and manufacturing companies in the foodservice hospitality industry. The first (*and only*) GFHE was held in July 2022." Dkt. 16, at 5 (emphasis in original). For contracts, the Idaho Supreme Court has stated that "if the Court finds no ambiguity, the document must be construed in its plain, ordinary and proper sense, according to the meaning derived from the plain wording of the instrument." *Thurston Enters., Inc. v. Safeguard Bus. Sys., Inc.*, 435 P.3d 489, 498 (Idaho 2019) (cleaned up). The Court finds no ambiguity in the non-competition clause. The plain wording of the contract describes the restricted events that Defendants could not participate in. Based on the description of FoodOvation events in the Separation Agreement, Prosper23 does not replicate that type of event. Thus, the scope of the activities restricted was reasonable, but it is likely that Jobe did not violate any restricted activities.

Overall, the restrictive covenants against Jobe are enforceable, but there is insufficient evidence that he violated them.

*(ii) Jobe's Oral Promises*

Next, Revelry alleges that Jobe orally promised that he would not do "Revelry-style events" on July 27, 2022, before his termination date and before he signed the Separation Agreement. Dkt. 2-1, at 5. Oral covenants not to compete can still be enforceable as long

as they meet the reasonableness factors. *See Magic Lantern Prods. v. Dolsot*, 892 P.2d 480, 482 (Idaho 1995), *abrogated on other grounds by Great Plains Equip., Inc. v. Nw. Pipeline Corp.*, 36 P.3d 218 (Idaho 2001). However, Section 20 of the Separation Agreement is an integration clause that, on its face, specifically states all prior agreements, written or oral, including the Operation Agreement, are superseded by the Separation Agreement. Dkt. 1, at 49. The Court must follow the plain text and meaning of the written contract agreed to by the parties. Thus, it is unlikely that Revelry will succeed on any breach of oral contract claims.

### (iii) Solicitation of Hattie Hill

Revelry states that Hattie Hill was a "Revelry consultant" and that Jobe violated the Separation Agreement by doing business with her. Dkt. 2-1, at 14. However, in her declaration, Hattie Hill asserts that she never had a contract with Revelry and received no fees from Revelry. Dkt. 16-2, at 2. She only advocated for GFHE 2022 after discussing it with Jobe when he was a part of Revelry, but she asserts she had no other relationship with Revelry outside of this. *Id*. Revelry offers no other evidence that Hattie Hill was a contracted consultant of Revelry. Thus, Revelry has not met its burden on this point.

### (iv) Disclosure and Use of Proprietary and Confidential Information

Revelry argues that Jobe disclosed and used proprietary and confidential information after leaving Revelry. Dkt. 2-1, at 14. Outside of the allegations in the Complaint, the only evidence that Revelry offers are the pitch materials. *See* Dkt. 3-2. As stated by the Court above, Revelry needs more than just the allegations in its Complaint to

prove this point. *See CI Games*, 2016 WL 9185391, at *11. The Court is unable to identify any material in the pitch that would likely be confidential. As pointed out by the Defendants, the customer feedback from GFHE 2022 was posted publicly on social media websites, such as Facebook. *See* Dkt. 3-2, at 3. It was not confidential or propriety information. Revelry also points to its tagline—THINK. ACT. WIN. DIFFERENTLY.— but the Court is unpersuaded that this phrase would be confidential or propriety information. Thus, it is unlikely that Revelry has met its burden here.

*(v) Directing Kircher to Solicit Restricted Customers*

Revelry states that Jobe directed Kircher to contact solicited customers in violation of Section 10(c) and 11(c) of his Separation Agreement. *Id*. It should be noted that Jobe was not restricted from working with Kircher outright, but rather Jobe was only limited from directing or encouraging Kircher to solicit restricted customers. Dkt. 1, at 45. There is no evidence that either Kircher or Jobe contacted restricted customers outside of Revelry's allegations in its Complaint. Thus, Revelry has not met its burden to show that Jobe directed Kircher to solicit restricted customers.

b. <u>Fraud</u>

Next, Revelry argues that Jobe fraudulently induced it to enter into the Separation Agreement and asks the Court to rescind the Separation Agreement. If the Separation Agreement is rescinded, Revelry would instead like the Court to rely on the Operating Agreement Jobe signed when he joined Revelry.[6]

---

[6] The Operating Agreement has different covenants than the Separation Agreement. *See* Dkt. 1, at 69.

Revelry relies on the Idaho Supreme Court's actual fraud test which uses nine elements that must be proved by "clear and convincing evidence." *Davis v. Tuma*, 469 P.3d 595, 603 (Idaho 2020). The elements are:

> (1) a statement or representation of fact; (2) its falsity; (3) its materiality; (4) the speaker's knowledge about its falsity or ignorance of its truth; (5) the speaker's intent that there be reliance; (6) the hearer's ignorance of the falsity of the statement; (7) reliance by the hearer; (8) justifiable reliance; and (9) resultant injury.

*Id*. (cleaned up). "Fraud is never presumed." *Barron v. Koenig*, 324 P.2d 388, 394 (Idaho 1958). Each essential element must be established by the party claiming fraud by clear and convincing evidence. *Id.* This is true "especially where the integrity of a written instrument is assailed." *Id.*

Revelry and Jobe negotiated the terms of the Separation Agreement in person, on the phone, and over email for several weeks. *See* Dkt. 16-4, at 14–20, 34–39. The Court is unconvinced by Revelry's arguments that it was induced into entering the Separation Agreement. Revelry and Jobe entered into the Separation Agreement on September 12, 2022. Dkt. 1, at 52. However, on July 31, 2022, Revelry was already suspicious of Jobe's intentions. In an email exchange between Revelry and its counsel on July 31, 2022, Jim Crystal, founder and majority stakeholder in Revelry, stated, "We spent yesterday reflecting on [Jobe's] actions recently and realized all the signals were there that he was *plotting* to leave Revelry and solicit our customers extensively." Dkt. 16-4, at 16 (emphasis added). Crystal explained that Revelry believed Luke Kircher was also involved. *Id.* Crystal further added, "It is not beyond the realm of possibility that David uses Luke as a front (he did it with Winsight when breaking his restrictions) to develop the business with

David behind the scenes." *Id*. This email exchange occurred more than a month before the parties signed the Separation Agreement on September 12, 2022. Dkt. 1, at 52.

This evidence alone makes it highly improbable for Revelry to succeed on elements seven and eight of the actual fraud test. Revelry had suspicions of Jobe but still signed the Separation Agreement after extensive negotiations. Revelry admits it regrets entering into the Separation Agreement that favors Jobe, but that is not enough to meet the standard for actual fraud. Dkt. 2-1, at 18-19. The only evidence that is clear and convincing points to the contrary. Revelry had doubts over Jobe's intentions and conduct but still entered into the Separation Agreement.

Revelry has not met its burden of proof on the fraud claim for purposes of a preliminary injunction.

### 2. Luke Kircher

#### a. Breach of Contract

Kircher's contract states that the agreement will be "governed and construed in accordance with the laws of the State of Oregon for contracts duly executed and wholly performed therein." Dkt. 1, at 37. Revelry relies on Idaho law in its argument, while Kircher relies on Oregon law in his argument. The plain text of the contract makes clear that Oregon law governs the contract.

"A cause of action for breach of contract accrues when the contract is breached." *Kantor v. Boise Cascade Corp.*, 708 P.2d 356, 359 (Or. Ct. App. 1985) (cleaned up). "A breach of contract is nonperformance of a duty due under a contract." *Id*. (cleaned up). For a breach of contract claim to be successful, the plaintiff must prove, "the existence of a

MEMORANDUM DECISION AND ORDER - 17

contract, its relevant terms, plaintiff's full performance and lack of breach and defendant's breach resulting in damage to plaintiff." *Slover v. Or. State Bd. of Clinical Soc. Workers*, 927 P.2d 1098, 1101 (Or. Ct. App. 1996) (cleaned up). Furthermore, the plaintiff "must allege and prove performance of its conditions upon his part." *Lamb-Weston, Inc. v. Or. Auto. Ins. Co.*, 341 P.2d 110, 113 (Or. 1959).

Here, the parties agree that there is an employment contract between Kircher and Revelry. The dispute is whether the contract's restrictive covenants are enforceable.

Defendants have provided evidence that Kircher was underpaid for three pay periods and Revelry never cured this breach of the contract. *See* Dkt. 16-3. Revelry has given no explanation for this other than the COVID-19 pandemic prevented Revelry from being able to fully pay Kircher. However, there is no evidence that Kircher was put on notice of this reason or that other employees incurred similar pay decreases. Dkt. 23, at 2. The evidence at the hearing was that Revelry breached the contract by not paying Kircher the agreed-upon salary. Dkt. 1, at 33. Based on that evidence, Revelry could not enforce the restrictive covenants.

Even if Revelry did not breach the employment contract, the evidence at the hearing showed that Kircher did not violate some of the restrictive covenants. Also, some of the restrictive covenants are likely unreasonable. Kircher's employment contract restricts several activities, such as disclosing confidential or propriety information, soliciting Revelry's clients at the time of his termination for a term of one year[7], and soliciting

---

[7] This duration term is acceptable under ORS 653.295(3).

Revelry's employees for a term of two years.[8] Dkt. 1, at 35.

Oregon, like Idaho, does not favor noncompete restrictive covenants. *Kennedy v. Wackenhut Corp.*, 599 P.2d 1126, 1133 (Or. Ct. App. 1979) ("Covenants not to compete are in restraint of trade, and are invalid as being against public policy."). However, one issue where Oregon law does tend to favor the employer is concerning restrictions surrounding the solicitation of employees of the employer. *See* Or. Rev. Stat. § 653.295(5)(b). Revelry produced no evidence that shows that Kircher solicited any employees of Revelry outside of the allegation regarding Hattie Hill. But the evidence is that Hattie Hill herself rejects the assertion that she was an employee or contractor of Revelry. Dkt. 16-2, at 2.

In addition, there is no evidence that Kircher distributed or relinquished any confidential or propriety information. As the Court has already stated, it is unlikely that the pitch materials have any confidential or proprietary information about Revelry. *See* Dkt. 3-2.

The last covenant restricting the solicitation of Revelry's clients is likely unreasonable under Oregon law. The covenant states:

> That employee will not, directly or indirectly, for a period of one (1) year from the date of termination of his employment with Employer, solicit, service or accept the business of any business, organization, or individual who was a client of Employer at the time of Employee's termination or within six (6) months prior to termination ("Restricted Accounts") or in any manner persuade any of the Restricted Accounts to reduce the amount of business any such account has customarily done or contemplates doing with Employer, either in the capacity of an individual, employee or as principal of any business entity.

---

[8] This duration term is acceptable under ORS 653.295(5)(b).

Dkt. 1, at 35. "Covenants binding a person not to exercise his trade or profession for a period of time in a particular area are contracts in restraint of trade disfavored at common law." *N. Pac. Lumber Co. v. Oliver*, 596 P.2d 931, 938 (Or. 1979). These types of covenants will be upheld only if "they are reasonably necessary to protect a legitimate interest of the person in whose favor they run, do not impose an unreasonable hardship upon the person against whom they are asserted, and are not injurious to the public interest." *Id*. A legitimate interest "need not be in the form of a trade secret or a secret formula; it may consist of nothing more than valuable customer contacts." *N. Pac. Lumber Co. v. Moore*, 551 P.2d 431, 434 (Or. 1976) (cleaned up) (holding that the covenant against defendant employee was reasonable because it only restricted a certain class of suppliers and buyers).

Here, the covenant has no limitation restricting Kircher from doing business with Revelry's clients. This is unlike in *Moore* where the defendant's covenant had 600 named suppliers and 200 named buyers he could not work with out of 85,000 suppliers and buyers. *Id*. at 641 n.2. Revelry offers no such limitation, and instead fully restricts Kircher from soliciting any of Revelry's clients. This is likely an unreasonable restriction and would place a burden on the public interest because it is a blanket restriction with no barriers outside of its duration. Thus, under Oregon law, it is likely that this restriction would be unreasonable and unenforceable.

### B. Irreparable Harm

A plaintiff may obtain an injunction only where he or she can "demonstrate immediate threatened injury." *Caribbean Marine Servs. Co. v. Baldridge*, 844 F.2d 668,

674 (9th Cir. 1988). The immediate injury must be irreparable. *Id.* A possibility of irreparable harm is insufficient. Instead, plaintiffs must establish that irreparable harm is likely, not just possible, in the absence of an injunction. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011); *Winter*, 555 U.S. at 23. Irreparable harm is defined as harm where "there is no adequate legal remedy, such as an award of damages." *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014). Irreparable harm has been described as "[p]erhaps the single most important prerequisite for the issuance of a preliminary injunction." 11A Wright & Miller, Fed. Prac. & Proc. § 2948. "The threat of being driven out of business is sufficient to establish irreparable harm." *Am. Passage Media Corp. v. Cass Commc'ns., Inc.*, 750 F.2d 1470, 1474 (9th Cir. 1985).

Revelry contends that it has already been harmed by canceling its GFHE event for 2023. Revelry alleges that it has damages over $2 million. Defendants argue that whatever harm exists has already happened when Revelry cancelled its GFHE 2023 event, and all other allegations of imminent, irreparable harm are generalities and conclusory. The Court agrees with the Defendants.

Revelry has already cancelled its GFHE 2023 event, and the circumstances of its cancellation seem to be from Revelry being caught off guard by sponsors and clients contemplating which event to attend: Prosper Forum 2023 or GFHE 2023. Revelry claims it cancelled the event to regroup and rethink its strategy going forward because of Prosper23. No matter the circumstances surrounding the cancellation, the harm has already occurred by cancelling GFHE 2023. Revelry has not been specific on the imminent harm that it now faces by letting Prosper Forum 2023 happen. Revelry has made wide

generalizations such as "Prosper23 has bled, and is bleeding Revelry of revenue, causing Revelry to abandon other business investments and revenue streams." Dkt. 2-1, at 21. However, Revelry does not give examples of this, such as financing statements, evidence of other events that have fallen through, or other events that are in a critical state of being cancelled because of Prosper23's existence. Furthermore, during the hearing, Revelry stated its FaBLE and FoodOvation events will still be held in the future.

Instead, the Court is more concerned that Defendants will face irreparable harm if it issues an injunction against them. Prosper Forum is a new business, so by issuing this injunction, it would effectively destroy Defendants' business and potentially ruin their reputation in the culinary field. Prosper23 already has a multitude of clients, speakers, and sponsors scheduled for the event. *See* Dkt. 16-3. Defendants have much to lose if this event were to be barred by the Court through an injunction.

Thus, it is unlikely that Revelry will face irreparable harm if Defendants go forward with Propser23. Any harm that does exist and that is a consequence of a breach of the restrictive covenants can be cured by monetary damages.

## C. Remaining *Winter* Factors

"[C]ourts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24. Revelry argues that the balancing of equities weighs in its favor because of the purported injury Revelry is facing through the conduct of the Defendants. Dkt. 2-1, at 24–25. Revelry argues further that Jobe and Kircher cannot articulate an equal or countervailing negative effect or injury if the Court grants the injunction. The Court finds

this assertion incredible. Defendants clearly have substantial monetary interests to lose—as the Court has already outlined—ranging in several millions of dollars and in addition to the high likelihood of losing their business if the injunction were to be granted. Thus, the balance of the equities weighs in favor of Defendants.

Revelry goes further to argue that the public interest factor weighs in its favor because "no other interested parties will be substantially or tangentially injured" by the issuance of the preliminary injunction. Dkt. 2-1, at 25. Defendants have shown that many clients, sponsors, and speakers are scheduled for Prosper23. In addition, the hotels and venue have already been booked. Enjoining this event would not only affect Defendants but all the other parties involved in Prosper23. Thus, the public interest weighs in favor of Defendants.

### D. Diversity Jurisdiction

Lastly, Defendants raise a potential concern with jurisdiction as it relates to Revelry's LLC. As the 2023 Committee Notes to Federal Rules of Civil Procedure, Rule 7.1 outline, it is important to clarify early on the citizenship of *each* member/owner of an LLC. In this case, Plaintiffs should promptly clarify the citizenship of *each* member (and file an amended complaint if necessary). If Defendants have further concerns, they may file a motion with the Court.

## V. CONCLUSION

The Court finds that it is unlikely that Revelry can succeed on the merits. In addition, it is unlikely that imminent, irreparable harm will occur to Revelry by denying this motion.

On the contrary, it would appear irreparable harm would be suffered upon Defendants if the motion is granted. Thus, Revelry's Motion for Preliminary Injunction is DENIED.

## VI. ORDER

IT IS HEREBY ORDERED:

1. Revelry's Motion for Preliminary Injunction (Dkt. 2) is DENIED.

DATED: April 18, 2023

David C. Nye
Chief U.S. District Court Judge